423 So.2d 1328 (1982)
Theresa DE LA OLIVA
v.
LOWNDES COUNTY DEPARTMENT OF PUBLIC WELFARE, Paul D. O'Leary.
No. 53548.
Supreme Court of Mississippi.
December 15, 1982.
Rehearing Denied January 5, 1983.
On Motion January 17, 1983.
*1329 Colom, Mitchell & Colom, Beverley B. Mitchell, Dorothy W. Colom, Columbus, for appellant.
Joseph A. Gentile, Robert G. Jenkins, Jackson, Robert L. Lancaster, Columbus, for appellee.
Before SUGG, ROY NOBLE LEE and DAN M. LEE, JJ.
EN BANC.
On Motion to Make Judgment More Specific and to Clarify Judgment January 17, 1983.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Chancery Court of Lowndes County wherein Theresa De La Oliva, appellant, sought custody of her two children from the Lowndes County Department of Public Welfare, appellee. The children[1] had been removed from Mrs. De La Oliva's custody in 1974 while she was a resident of Columbus, Mississippi. Following their removal, Mrs. De La Oliva returned to California, where she presently resides, in hopes of establishing a home suitable for the return of her children.
Mrs. De La Oliva successfully obtained temporary custody of Brian in January of 1980. The welfare department, however, sought to have her parental rights terminated as to the child Theresa based upon abandonment of the child, as well as the existence of an extreme and deep-seated antipathy by the child toward Mrs. De La Oliva. At the conclusion of a very lengthy trial, the chancellor vested the custody of Brian with Mrs. De La Oliva but terminated Mrs. De La Oliva's parental rights as to Theresa. We reverse.
Appellant came to this country from Spain in 1967. In 1969 she married Paul O'Leary. The couple first lived in Sacramento, California, but later moved to Puerto Rico. From Puerto Rico the couple moved to Michigan where Brian O'Leary was born on April 2, 1971.
While appellant was pregnant with her second child, O'Leary abandoned the relationship. Their second child, Theresa O'Leary, was born on February 4, 1973, in Sacramento, California. Later that same year, appellant received a phone call from O'Leary who advised her of his whereabouts. As a result of this information, appellant and her children traveled to Columbus in December of 1973 to be reunited with Paul O'Leary.
While in Columbus, O'Leary, due to his drinking problem, physically abused appellant and deserted the household. Following this incident, appellant was taken to the Lowndes County Department of Public Welfare by a police officer. The welfare department supplied food for appellant and her family. Appellant, however, was unsuccessful in her employment endeavors in the Columbus area.
Appellant was hospitalized in June 1974. O'Leary signed a voluntary consent form to place the children in foster care when appellant was hospitalized. However, upon appellant's release from the hospital, the children were returned to her custody. According to welfare department officers, the return of the children to appellant was on a trial basis only.
On July 1, 1974, appellant was hospitalized again. The children were placed in foster care pursuant to the previous temporary court order. The children were not returned to appellant's care and custody following this incident. Their custody has *1330 remained with the welfare department since that time.
Because of the difficulties appellant experienced in the Columbus community, the welfare department suggested she return to a Spanish speaking community in hopes of establishing a home for herself and her children. Oliva subsequently moved to California where she continues to reside.
O'Leary obtained a divorce from appellant on May 1, 1975, upon the grounds of habitual cruel and inhuman treatment. Legal process was had by publication. In April of 1976, O'Leary sought custody of the two minor children, but was unsuccessful in his actions.
Appellant returned to Columbus after departing for California in the summer of 1976. At this time, the welfare department furnished appellant an apartment and a job; however, she returned to California to marry her present husband. Although appellant's trips to Columbus, barring court appearances, for the purpose of visiting her children, have been somewhat limited, the record is replete with her continuous desire to maintain contact with her children by both telephone calls and written communications.
Appellant returned to Columbus in 1979, whereupon she learned of an attempt being made to adopt Theresa. Dr. and Mrs. Ellis,[2] Theresa's foster parents, had filed a petition to adopt Theresa in which the natural father, Paul O'Leary, had joined. Appellant objected to the petition which was later denied. The court ordered the welfare department to continue supervision of the child and work toward the development of a plan to return the child to the mother.
In a separate action, appellant thereafter filed a petition for custody of Brian. This petition was later amended to include Theresa. Temporary custody of Brian was granted to appellant on January 28, 1980. The Department of Public Welfare filed a cross-petition to terminate the parental rights of appellant as to Theresa. The father, Paul O'Leary, also filed for custody of both children.
At the conclusion of the hearing, the chancellor, upon conflicting lay and expert testimony, terminated appellant's parental rights as to Theresa, finding a deep-seated antipathy existing between the child and appellant as well as an erosion of that relationship. The chancellor, however, ordered that the permanent care and custody of Brian be vested in appellant.
I. Did the chancellor err in terminating appellant's parental rights upon a preponderance of the evidence?
The chancellor in her findings stated:
In conclusion, the Court overrules the Motion to Dismiss the Petition to Terminate Parental Rights made at the conclusion of Department's case, and on the grounds of deep-seated and extreme antipathy and erosion of the relationship, terminates the rights of the mother as to the daughter, Terrie, [Theresa] upon a preponderance of the evidence in the record.
At the time this cause was tried, Mississippi Code Annotated section 93-15-109 (Supp. 1980), provided:
After hearing all the evidence in regard to such petition, if the chancellor is satisfied by a preponderance of the evidence that the parent or parents are within the grounds requiring termination of parental rights as set forth in this chapter, then the court may terminate all the parental rights of the parent or parents regarding the child, and terminate the right of the child to inherit from such parent or parents. The termination of the parental rights of one (1) parent may be made without affecting the parental rights of the other parent, should circumstances and evidence ever so warrant.
While this case was pending on appeal, the United States Supreme Court decided Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Santosky involved *1331 the constitutionality of New York Social Service Law §§ 384-b, subd. 4(d), 384-b, subd. 7(a) and the New York Family Court Act § 622, which authorized the termination of parental rights following a finding of appropriate grounds established by a fair preponderance of the evidence. The Supreme Court held that in a termination of parental rights proceeding, the process which is due under the fourteenth amendment of the United States Constitution as determined by an application of the balancing of three factors[3] enumerated in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), requires a standard of proof which is at least clear and convincing as opposed to one which is merely by a fair preponderance of the evidence.
Following the decision in Santosky, this Court addressed the constitutionality of section 93-15-109 in Natural Father v. United Methodist Children's Home, 418 So.2d 807, 809 (Miss. 1982), wherein we stated:
Under Santosky, supra, the standard of proof established by Mississippi Code Annotated § 93-15-109 (Supp. 1981), is obviously deficient and unconstitutional because it allows parental rights termination to be decreed based upon a preponderance of the evidence, rather than the standard of at least "clear and convincing" evidence. Of course the only portion of the statute which is affected by our decision today is the standard of proof required by § 93-15-109 (Supp. 1981) in a termination of parental rights action. The standard of proof in any such action brought under the statute must be "clear and convincing" in accordance with Santosky, supra. Other than in this one aspect, the operation and application of the statute is unaffected. (418 So.2d at 811)
The chancellor, in making her findings in the case sub judice, clearly relied on an unconstitutional and impermissible standard of proof. Therefore, the findings entered pursuant thereto are manifestly wrong. The proof in the case at bar established beyond peradventure that appellant has attempted to establish a suitable home for the return of her children since 1976. She has continually made efforts to remain in touch with her children despite barriers imposed by their geographic location and constant interference by many well-intentioned people. The proof wholly failed to establish appellant had abandoned her children and was further insufficient to establish, by clear and convincing proof, an extreme and deep-seated antipathy by the child toward appellant or some other substantial erosion of the parent and child relationship which was caused, at least in part, by appellant's serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate or prolonged imprisonment. See Miss. Code Ann. § 93-15-103(3)(e) (Supp. 1982). Most of the antipathy entertained by the child toward appellant, or erosion of the parent/child relationship was largely contributed to by well-intentioned people in the welfare department and judicial system's interference in that relationship. In denying an adoption of the child by the Ellises in 1979, Chancellor Brand made the following findings:
It has taken five years for this case to reach this point. The errors that have been committed will not be corrected today. I am compelled to call to the specific attention of the Welfare Department Section 43-15-15, relative to children that they may have in their custody, that there is a statutory time limit for custody of children in foster homes; that they do require evaluation and that the law does require individual plans for the development and return of the child to the natural parents.

To avoid the tragedy of this case, the Court will require of the Welfare Department that a list by cause number and *1332 name be filed in the office of the Chancery Clerk reflecting each case in which the department has custody pursuant to the Court Order of a child that is in foster care in this county. Said filing to be no later than the 1st day of October, 1979; said filing to include the department's plan of development for the return of the child to its parents, or in the alternative, the department's plan for termination of parental rights. (emphasis ours).
Apparently, there was no appeal taken from this ruling. Despite this fact, the welfare department evidently failed to implement a plan for the return of the child unto appellant and did not seek to terminate appellant's parental rights until appellant filed her present suit for custody of the child.
Because this cause was tried under an unconstitutional standard of proof and the proof was wholly insufficient to support a finding that would justify the termination of appellant's parental rights, this cause is reversed and judgment rendered here for appellant with directions that the welfare department restore custody of the child to appellant as expeditiously as possible without interruption to the child's educational activities.
REVERSED AND RENDERED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.
PRATHER, J., took no part.

On Motion to Make Judgment More Specific and to Clarify Judgment

OPINION AND ORDER
DAN M. LEE, Justice, for the Court:
This cause was brought upon motion of appellant, Theresa De La Oliva, to make judgment more specific, filed January 10, 1983, response and motion to correct and clarify judgment filed on January 11, 1983, by Paul D. O'Leary, a defendant and cross-complainant in this cause at the trial, who did not appeal to this Court. (Mr. O'Leary is the natural father of Theresa O'Leary, the minor child who is the subject of this unfortunate litigation). O'Leary made an entry of appearance and motion to abate in this cause in the Chancery Court of Lowndes County, Mississippi, on July 16, 1980, and the trial court entered an order allowing the entry of appearance and granted a motion for continuance to O'Leary on July 18, 1980.
On August 19, 1980, O'Leary filed an answer and cross bill seeking custody of Theresa O'Leary. On January 27, 1981, the chancellor rendered an opinion terminating the parental rights of the appellant and granted continuing custody of Theresa O'Leary to the Lowndes County Department of Public Welfare, the effect of which was to deny O'Leary custody of his daughter Theresa O'Leary.
Appellant perfected an appeal to this Court and a decision was rendered on December 15, 1982, reversing the chancellor, and judgment was rendered in the Supreme Court for appellant with directions that "the welfare department restore custody to the appellant as expeditiously as possible without interruption to the child's educational activities." A petition for rehearing was denied and mandate issued on January 6, 1983.
The motion of the appellant states that Theresa O'Leary may enter the next semester of school in Hollywood, California on February 2, 1983, and that the said child started a semester of school in Lowndes County on or about January 3, 1983.
O'Leary's motion to correct and clarify largely seeks to relitigate this unfortunate cause. However, he does point out that while he did not appeal from the ruling of the trial court, he was not served with summons to answer the appeal as provided by Mississippi Code Annotated section 11-51-55 (1972) and section 11-51-61 (Supp. 1982). The motions of the appellant and O'Leary both have attached affidavits which substantiate an unfortunate situation that has already caused physical conflicts resulting in injury to the child, and that the *1333 child was placed in the hospital pending an order of this Court.
We are of the opinion and so order that the former order of this Court should be made more specific and clarified as an emergency matter at this time in order to prevent further violence. We, therefore, order that the former opinion in this cause be modified by deleting the words "without interruption to the child's educational activities" from the last paragraph thereof. With this deletion, said opinion will now read as follows:
Because this cause was tried under an unconstitutional standard of proof and the proof was wholly insufficient to support a finding that would justify the termination of appellant's parental rights, this cause is reversed and judgment rendered here for appellant with directions that the welfare department restore custody of the child to appellant immediately.
From the record before this Court, the mother is entitled to the custody of her child Theresa O'Leary.
PATTERSON, C.J., BROOM, P.J., and ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.
WALKER, P.J., and PRATHER, J., took no part.
NOTES
[1] Brian was approximately eleven years old at the time of the hearing while Theresa was approximately eight years old.
[2] Dr. Ellis was Theresa's psychiatrist as well as her foster father. Dr. Ellis was also the welfare department's primary expert witness who asserted the best interest of Theresa would be served by a severance of the relationship with appellant.
[3] The three factors enumerated are:

[1] The private interests affected by the proceeding;
[2] The risk of error created by the state's chosen procedure;
[3] And the countervailing governmental interest supporting use of the challenged procedure.