427 So.2d 1384 (1983)
Ralph LUTTRELL, et ux.
v.
Robert KNEISLY, et ux.
No. 53659.
Supreme Court of Mississippi.
March 16, 1983.
*1385 Mayfield & Smith, C. Emanuel Smith, Tupelo, for appellant.
Sparks & Colburn, David R. Sparks, Tupelo, for appellee.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Chancery Court of Lee County wherein Robert Kneisly and his wife Margaret Kneisly, appellees, petitioned the court for the termination of the parental rights of Ralph Luttrell and his wife Katie Luttrell, appellants, as to Marie Luttrell, a foster child of the Kneislys. The Kneislys also sought to adopt the child upon the termination of the natural parents' parental rights. The Tishomingo and Lee County Departments of Public Welfare resisted the petition and proposed adoption, as did the natural parents. At the conclusion of the hearing, the chancellor found that the Luttrells had abandoned Marie and were unfit to have her back. Parental rights were therefore terminated and an adoption decree entered in favor of the Kneislys. The Luttrells have appealed from the chancellor's findings. We reverse.
Appellants reside in Tishomingo County and are the parents of five children, the youngest of whom is the subject of the present controversy.[1] Appellant Ralph Luttrell is totally disabled from burns he received as a child and severe arthritis. He has a ninth grade education. Appellant Katie Luttrell also has a ninth grade education and is either retarded or suffers from a learning disability.
In January 1974 appellant Ralph Luttrell slipped on some ice while working for the Tishomingo County Hospital, thereby injuring his kneecap. Thereafter, he was unable to find employment and began drawing $82 per month for Aid to Dependent Children. Marie, the child who is the subject of this suit, was born on December 10, 1974. Appellants gave Marie to Mrs. Roy Johnson and her daughter Rona Johnson, in February 1975. The Johnsons took Marie, who at that time was suffering from diarrhea, vomiting and diaper rash, to the doctor. At this time appellants' living conditions were very poor. The Johnsons cared for Marie off and on for approximately one year, whereupon Rona Johnson contacted the Commissioner of the State Department of Public Welfare by letter concerning the appellants' situation.
When appellants learned that someone was trying to persuade the welfare department to take their children, they voluntarily placed three of them, including Marie, with the department until they became financially able to tend to their needs.
Marie was placed in the home of the appellees[2] when she was approximately fourteen months old. She has resided with appellees for approximately five years. Appellees are both well-educated people with a substantial income. There is really no dispute as to the love and care they have shown Marie and their genuine desire to adopt her as their own. They have two children of their own.
Marie has been under the care of Dr. Frank Wilburn since June 1978 for the treatment of hyperactivity. Dr. Wilburn asserted the appellees had responded well to counseling and Marie had made better than average progress. In his opinion, Marie would be in a much better position to cope with her hyperactivity if she remained with the appellees.
Dr. Gary Mooers, an associate professor of social work and director of social programs at the University of Mississippi, expressed *1386 his opinion that parental rights should be severed because returning Marie to her natural parents would be returning her to a home she has never known. Dr. Mooers asserted there was no difference in breaking the bonds which existed in the foster home than to separate a child from its natural parents after having been raised by its natural parents.
Mrs. Frances Carpenter, a Lee County Welfare Department employee, expressed her opinion that the appellees could discharge the duties of adoptive parents even though she had never been in the appellants' home. Mrs. Carpenter was well aware of the recommendation by the Tishomingo County Welfare Department that Marie be returned to her natural parents. Joyce Downs, also an employee of the Lee County Department of Welfare, believed termination of parental rights was in Marie's best interest. Both Mrs. Carpenter and Ms. Downs had worked as Marie's case workers.
Rose Harrison, the area consultant in social services with the Division of Social Services of the Mississippi Department of Public Welfare, stated that as late as March 1980 it was agreed that termination of parental rights was in order followed by adoption by the appellees. Ms. Harrison had never been in the appellants' home but asserted the welfare department had made every diligent effort to rehabilitate appellants. According to her, the only change in appellants' situation had been their financial condition by qualifying for Social Security Income and better housing. Ms. Harrison did not believe the appellants could provide the kind of care, nurture, warmth, and home environment that would be necessary for Marie, as well as parental supervision. Marie's best interest would therefore be served by allowing the adoption.
Employees of the Tishomingo County Welfare Department denied that the adoption of Marie was in her best interest. Mrs. Shelia Thorn worked with the Luttrells from July 1976 through July 1979. Although she was unable to return Marie to appellants during her tenure at the department, she asserted that it just was not the right time because the appellants had their hands full with the other children who had returned home from foster care.[3] Mrs. Thorn testified that the appellants always showed an interest in Marie, desiring to maintain their parental relationship. Mrs. Thorn stated that appellants maintained contact with Marie, including visits, and wrote letters, never abandoning their desire to have her back. She always thought the appellants had done the very best they could, never neglecting or abusing their children, and provided as well as they could for the children. They visited their children's school and always saw to their medical needs. Appellants had also made substantial improvements in their home during the three-year period.
Mrs. Barbara Rally worked with the appellants for a couple of years after their children were placed with the department. Upon hearing of the Luttrell children having head lice in late 1979 and missing four or five weeks of school, she recommended the termination of parental rights. Appellants requested a homemaker later in February 1980 and when Mrs. Rally transported the homemaker to appellants' residence, she was very pleased as to their progress and thereafter withdrew her recommendation for termination of parental rights. Mrs. Rally never felt the appellants didn't love their children but did the best they could. One of the reasons for placing the children with the department was that appellants knew they were in trouble and wanted something better for their children. Mrs. Rally stated that they always desired to have Marie returned, calling often to inquire as to how she was. She recognized that their inability to care for the children was due to their lack of income. Mrs. Rally recommended that Marie be returned to *1387 appellants, noting improvements in their financial situation, their home, and self confidence.
Margo Taylor, appellants' case worker since July 1979, described their home as suitable and noted their active interest in their children's education. She related a visit between Marie and appellants, asserting Marie went right to appellants and called them mama and daddy except for calling her father Ralph once at the beginning of the visit. Marie seemed glad to see them. Appellants delivered Christmas gifts in 1979 and Christmas and birthday gifts in 1980 to the welfare department for Marie. In the early part of 1980 she requested that Marie be gradually returned to appellants.
The chancellor found that appellants had abandoned Marie and were unfit to have her returned. Their parental rights were terminated and an adoption was decreed in appellees' favor.
Did the chancellor err in terminating appellants' parental rights?
The briefs and arguments presented on appeal primarily focus on the law to be applied to the present case in light of the simultaneous repeal of Mississippi Code Annotated section 93-15-1 (1972), et seq. and the enactment of section 93-15-101 (Supp. 1982), et seq. which became effective July 1, 1980, while the case sub judice was pending before the chancery court. In our opinion, such is not the controlling issue. The chancellor in terminating appellants' parental rights, regardless of which law was controlling, employed an impermissible and unconstitutional standard of proof as announced by the United States Supreme Court in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and applied by this Court in De La Oliva v. Lowndes County Department of Public Welfare, 423 So.2d 1328 (Miss. 1982); and Natural Father v. United Methodist Children's Home, 418 So.2d 807 (Miss. 1982). The chancellor in his decree stated:
14. That Petitioners have successfully met the burden of proof imposed by law upon them in that they have shown by a preponderance of the evidence and by substantial evidence that the rights of the natural parents should be terminated and that a decree should be entered ordering the adoption of Marie Luttrell by Petitioners. (emphasis ours).
In De La Oliva v. Lowndes County Department of Public Welfare, supra, we stated:
Following the decision in Santosky, this Court addressed the constitutionality of section 93-15-109 in Natural Father v. United Methodist Children's Home, 418 So.2d 807, 809 (Miss. 1982), wherein we stated:
Under Santosky, supra, the standard of proof established by Mississippi Code Annotated § 93-15-109 (Supp. 1981), is obviously deficient and unconstitutional because it allows parental rights termination to be decreed based upon a preponderance of the evidence, rather than the standard of at least "clear and convincing" evidence. Of course the only portion of the statute which is affected by our decision today is the standard of proof required by § 93-15-109 (Supp. 1981) in a termination of parental rights action. The standard of proof in any such action brought under the statute must be "clear and convincing" in accordance with Santosky, supra. Other than in this one aspect, the operation and application of the statute is unaffected. (418 So.2d at 811). (423 So.2d at 1331)
The chancellor, in terminating appellants' parental rights, clearly relied upon an unconstitutional and impermissible standard of proof. Therefore, the findings and decree entered pursuant thereto are manifestly wrong.
Because this case must be reversed and remanded to be retried under our present statutes on Termination of Rights of Unfit Parents, we deem it necessary to pass upon one other question presented on appeal, which is, the construction of Mississippi Code Annotated section 93-15-107 (Supp. 1982), which provides:
In an action to terminate parental rights, the mother of the child, the legal *1388 father of the child, and the putative father of the child, when known, shall be made parties defendant. A guardian ad litem shall be appointed to protect the interest of the child in the termination of parental rights. A child may be made party plaintiff, and any agency holding custody of a minor shall act as party plaintiff. (emphasis ours).
The statute, as written, is clear and unambiguous. It unequivocally mandates that a guardian ad litem be appointed to protect the interest of a child in a termination of parental rights proceeding. The statute is clearly mandatory and not permissive.
Because this cause was tried under an unconstitutional standard of proof, it is hereby reversed and the decree of adoption set aside with temporary custody of the child being restored to the Tishomingo County Department of Public Welfare to implement such plans that will serve the best interest of the child.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P. JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] Appellants' children and their ages are: Richard, 12; Johnny, 10; Becky, 9; Anthony, 7; and Marie, 6.
[2] Appellees reside in Lee County.
[3] Johnny was returned on December 28, 1979, and Richard was returned in either May or June 1979.