GRIFFIS, J„
for the Court:
¶ 1. Lori[1] appeals the Forrest County Chancery Court’s judgment terminating her parental rights to her daughter, Jenny. Lori contends that: (1) Jenny does not have deep-seated antipathy toward Lori, and she did not abandon Jenny; therefore, the burden to terminate Lori’s parental rights was not met; (2) Jenny’s father, George, interfered with Lori’s visitation rights; and (3) it is in Jenny’s best interest that Lori’s parental rights not be terminated. We find no reversible error and affirm.
FACTS
¶ 2. Jenny, the natural daughter of Lori and George, was born on April 1, 1997. On January 24, 2000, an order was entered establishing paternity and child support against George. Lori was given primary *1250 physical custody, and George was given reasonable rights of visitation.
¶ 3. On September 18, 2002, an agreed order was entered by the parties. The order stated that a material change in circumstances justified a modification of custody. George was given temporary physical custody of Jenny until further notice of the chancery court. George testified that the parties agreed to this change in custody because Lori was then abusing drugs and had experienced an overdose in 2002.
¶ 4. Jenny has been in George’s custody ever since this modification. George is now married to Rebecca. Jenny has a good relationship with her stepmother and calls her “mama.” Rebecca intends to adopt Jenny following the termination of Lori’s parental rights.
¶ 5. The September 18, 2002, order also gave Lori supervised visitation rights. She was allowed to visit with Jenny every other weekend at the home of Lori’s stepmother, Deborah. George testified that Lori did not exercise her visitation rights under this order.
¶ 6. On November 26, 2003, following trial, the chancellor entered an order granting George permanent physical custody of Jenny. Lori was given reasonable rights of visitation, and she was required to pay $150 per month in child support. The order further enjoined Lori from allowing any contact between Jenny and Drew, the father of one of Lori’s children. Lori exercised her visitation with Jenny until March 12, 2004. Lori’s last phone contact with Jenny was on April 9, 2004.
¶ 7. After Lori ceased to exercise her visitation, Deborah continued to get Jenny during the visitation weekends. Deborah testified that Lori visited with Jenny for short periods of time while Jenny was at Deborah’s home. This continued until February 2006 when Deborah’s husband attempted suicide. At that point, Jenny became fearful of spending the night at Deborah’s home and the visitations ended.
¶ 8. On October 13, 2006, Lori filed a petition for contempt alleging that she had been denied visitation. On February 8, 2007, George answered and filed a counter-petition for contempt, modification, and/or termination of parental rights.
¶ 9. The chancellor appointed a guardian ad litem to determine what schedule of visitation with Lori would be in the best interest of the child. Following an investigation, the guardian ad litem recommended that Lori should have no visitation with Jenny because of the erosion of their relationship.
¶ 10. Lori then requested that the chancellor allow a licensed counselor to interview the parties. Dr. John P. Galloway was appointed as counselor. In his findings, Dr. Galloway addressed the disruption in Jenny’s life cause by Lori’s behavior. Dr. Galloway found that Jenny thought her mother was selfish and self-centered. He further found that Jenny felt rejected by her mother. However, Dr. Galloway concluded that he did not find Jenny to be more upset or angry than any other child who has a parent with a drug addiction.
¶ 11. Trial on the issue of the termination of Lori’s parental rights was held on August 19, 2008, and September 18, 2008. Lori testified that she was thirty-seven years old with three children by three different fathers. Her oldest son, age fourteen, lives with his paternal grandmother. Lori also lost custody of her son in 2002 due to her drug addiction. Jenny is Lori’s middle child, and Lori’s youngest daughter is seven years old. Drew is the father of the youngest daughter, and he and Lori previously used drugs together. *1251 Lori currently has custody of her daughter with Drew.
¶ 12. Unlike her relationship with Jenny, Lori has continued to visit and support her son. She also supports her youngest daughter who is in her custody. Lori testified that she maintained these relationships with her other two children despite a period of over two-and-a-half years when she failed to pay her child support for Jenny. She also gave the other children Christmas and birthday presents and talked to them on the telephone. Lori did not do so for Jenny.
¶ 13. The chancellor found that Lori had not been a part of Jenny’s life for more than two years prior to the filing of termination proceedings and that there is antipathy and anger from Jenny toward Lori. Accordingly, the chancellor found that Lori’s parental rights should be terminated.
STANDARD OF REVIEW
¶ 14. Our appellate review of a chancellor’s decision to terminate parental rights is limited to a review of the chancellor’s findings of fact under the manifest error/substantial credible evidence test. S.N.C. v. J.R.D., 755 So.2d 1077, 1080 (¶ 7) (Miss.2000) (quotation omitted). “[T]he chancellor must find grounds for termination by clear and convincing evidence in order to terminate the parental rights of a parent regarding the child.” A.C.W. v. J.C.W., 957 So.2d 1042, 1045 (¶ 12) (Miss.Ct.App.2007) (citing Miss.Code Ann. § 93-15-109 (Rev.2004)). Questions of law are reviewed de novo. S.N.C., 755 So.2d at 1080 (¶ 7).
ANALYSIS

1. Whether George met his burden of proof to terminate Lori’s parental rights.

¶ 15. Lori claims that George did not prove grounds for the termination of her parental rights by clear and convincing evidence. George failed to file a brief in response to Lori’s claims on appeal. Usually such failure is tantamount to a confession of the appellant’s assignments of error; however,
when matters on appeal touch the welfare of a minor child, then regardless of whether a party filed a brief, this Court will “reach the merits of the issues in this appeal, though we proceed unaided by a brief from the appellee.” Allred v. Allred, 735 So.2d 1064 [, 1067] (¶ 9) (Miss.Ct.App.1999); see also Barber v. Barber, 608 So.2d 1338, 1340 (Miss.1992) (holding that despite our ordinary practice of taking issues as confessed when a party fails to file a brief; in matters of child custody and support, practice is to make a special effort to review the record and the merits of the issues raised).
N.E. v. L.H., 761 So.2d 956, 962 (¶ 14) (Miss.Ct.App.2000).
¶ 16. “The reasons for which parental rights may be terminated are controlled by the Legislature. The courts have no right, authority or power to add to those reasons.” Gunter v. Gray, 876 So.2d 315, 319 (¶ 19) (Miss.2004). Mississippi Code Annotated section 93-15-103 (Rev. 2004) establishes the following grounds for the termination of parental rights that the chancellor found applicable to this case:
(1) When a child has been removed from the home of its natural parents and cannot be returned to the home of his natural parents within a reasonable length of time because returning to the home would be damaging to the child or the parent is unable or unwilling to care for the child, relatives are not appropriate or are unavailable, and when adoption is in the best interest of the child, taking into account whether the *1252 adoption is needed to secure a stable placement for the child and the strength of the child’s bonds to his natural parents and the effect of future contacts between them, the grounds listed in subsections (2) and (3) of this section shall be considered as grounds for the termination of parental rights. The grounds may apply singly or in combination in any given case.
[[Image here]]
(8) Grounds for termination of parental rights shall be based on one or more of the following factors:
[[Image here]]
(b) A parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; or
[[Image here]]
(f) When there is an extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which was caused at least in part by the parent’s serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment;....
Miss.Code Ann. § 93-15-103(1), (3)(b) & (f) (emphasis added).
¶ 17. The chancellor found that Lori’s drug use and her relationship with Drew, a fellow drug user, created an inability for Lori to have a relationship with Jenny. The chancellor’s order stated the following:
From the evidence presented sub judice the Court finds that clear and convincing evidence exists that Defendant has not been a part of [Jenny]’s life for more tha[n] two years prior to the filing of the termination pleadings and that there exists an antipathy, as described by the Guardian Ad Litem, and anger, as described by the social services expert, from [Jenny] toward her mother. No doubt the problems created by the personal relationships chosen by Defendant as promulgated by drug use has been a key element in her inability to have a relationship with [Jenny] that even approaches a normal existence by an eleven[-]year[-]old girl with her mother. It is further demonstrated by the half siblings of [Jenny] as they relate to the Defendant in their custody and upbringing. While the Court acknowledges the testimony of Defendant in wanting to be a mother to [Jenny], the facts belie her ability to carry out that relationship, meeting the test described in Natural Mother v. Paternal Aunt, 583 So.2d 614 (Miss.1991) of a substantial erosion of the parent[-]child relationship due to prolonged absence and lack of communication involving a child over three years of age for longer than a period of one year. Section 93 — 15—103(3)(b), Mississippi Code of 1972, as amended.
While the social worker expert opined of possible problems of [Jenny] with her [stepmother] over the anger of losing a parent through termination in contrast with the ongoing anger of the current rejection, he recommends counseling to deal with that circumstance. However, the dilemma is present, and is the direct result of Defendant’s inability to have the relationship with [Jenny] that would have avoided that circumstance.
To say that the relationship between [Jenny] and Defendant could be restored, after a prolonged absence of several years, reinforces the finding that the substantial erosion exists, thereby meeting the statutory grounds for termination. This case is about what existed at the time of the filing of the termination pleadings and what is best for *1253 [Jenny], not what the Defendant may have intended in the past or intends in the future.
Further, the Court finds clear and convincing evidence that [Jenny]’s being in the environment with her father and current family is in her best interest.
¶ 18. Upon our review of the record, we find that although the chancellor’s finding of abandonment was improper based on the evidence in the record, we find substantial evidence to support the chancellor’s finding of deep-seated antipathy. As this Court has held: “According to the language of section 93-15-103(3), any one factor can justify the termination of parental rights. See also J.C.N.F. [v. Stone County Dep’t of Human Svcs.], 996 So.2d [762,] 766 (¶ 13) [Miss.2008] (stating that any one factor is sufficient to terminate parental rights).” M.H. v. D.A., 17 So.3d 610, 616-17 (¶ 20) (Miss.Ct.App.2009).

A. Lori’s Lack of Contact with Jenny for More than One Year

¶ 19. Lori argues that there was no clear and convincing evidence that she abandoned Jenny; therefore, her parental rights were improperly terminated. The supreme court has provided the following test for a showing of abandonment:
This Court has defined abandonment as “any conduct by a parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child.” S.N.C., 755 So.2d at 1081 [(¶ 11)]. “The test is an objective one: whether under the totality of the circumstances ... the natural parent has manifested [his] severance of all ties with the child.” Id.
Gunter, 876 So.2d at 320 (¶ 21).
¶ 20. The chancellor found that “clear and convincing evidence exists that Defendant has not been a part of [Jenny]’s life for more tha[n] two years prior to the filing of the termination pleadings.... ” Thus, the chancellor concluded that George met his burden of proving the ground for termination of Lori’s parental rights under section 93 — 15—103(3)(b) which states that a parent has made no contact with a child three years of age or older for a period of one year. However, the evidence in the record is, at best, inconclusive as to this finding.
¶ 21. While Lori’s last official visitation with Jenny was in March 2004, Lori continued to see Jenny on the weekends that Jenny spent at Deborah’s home. Deborah’s visitation with Jenny did not end until February 2006. Within one year, on October 13, 2006, Lori filed her petition for contempt alleging that George had denied her visitation with Jenny. Lori’s petition stated that it was in the best interest of the child that she be allowed to exercise her visitation. On January 29, 2007, Lori filed a motion for temporary relief requesting that a temporary visitation schedule be entered because Lori had not been allowed to visit with Jenny, and because a significant time may elapse before the matter could be heard on the merits. George filed termination proceedings on February 8, 2007, and the chancellor’s final judgment in this case was not entered until November 5, 2008.
¶ 22. The chancellor’s statement that Lori was not a part of Jenny’s life for the two years prior to the filing of termination proceeding is not supported by clear and convincing evidence in the record. Deborah’s uncontroverted testimony established that Lori visited with Jenny during the weekends that Jenny spent at Deborah’s home. Deborah further testified that those weekends continued until February 2006. Termination proceedings were filed in February 2007, so at most, there was only one year that Lori did not see Jenny. Furthermore, during that year, Lori ac *1254 tively pursued her right to visitation with Jenny by filing proceedings with the chancery court. Under the totality of the circumstances, there is no substantial credible evidence to support a finding that Lori evinced a settled purpose to relinquish her parental claims to her child.
¶ 23. We find that the chancellor’s holding that George proved abandonment for a period of one year under section 93-15-103(3)(b) by clear and convincing evidence is not supported by substantial credible evidence. However, section 93-15-103(3) is clear that only one ground is necessary to terminate parental rights. Because the chancellor properly found deep-seated antipathy on the part of Jenny toward Lori, as we discuss in the next section, we hold that the lack of clear and convincing evidence to support the finding of abandonment is harmless error. See In re Adoption of Minor Child, 931 So.2d 566, 578 (¶ 33) (Miss.2006) (holding that the chancellor’s erroneous finding of abandonment was harmless error where the chancellor properly found that parental rights should be terminated on other statutory grounds).

B. Deep-seated Antipathy

¶ 24. Lori contends that the chancellor’s finding of Jenny’s deep-seated antipathy toward Lori is not based on substantial evidence. She supports this argument by citing Dr. Galloway’s testimony that Jenny’s anger toward Lori is no greater than any other child with a parent who has a drug addiction. Thus, Lori claims that Jenny’s anger does not rise to the level of deep-seated antipathy required to terminate her parental rights.
¶ 25. However, the chancellor’s finding was based on his review of all of the evidence presented in this case. We find substantial evidence in the record to support the chancellor’s conclusion that Jenny has the required antipathy and anger to establish the ground for termination of Lori’s parental rights.
¶ 26. First, we note that Dr. Galloway made no finding that Jenny does not have deep-seated antipathy toward Lori. Instead, he merely stated that Jenny was no angrier than any other child he had seen in a similar situation with a parent with a drug addiction. Dr. Galloway did express that, as a general rule, he prefers using alternatives to the termination of parental rights, and he recommended that Lori be reintroduced into Jenny’s life through the use of extensive therapy.
¶ 27. However, despite Dr. Galloway’s preference against the termination of parental rights, his testimony supports the chancellor’s decision that the termination of Lori’s parental rights was in the best interest of Jenny. He testified that reinserting Lori back into Jenny’s life could adversely affect Jenny if it was not done properly through the use of therapy and support groups. Lori’s own testimony shows a pattern of her refusal to seek treatment that has been recommended throughout these proceedings.
¶ 28. Lori testified that, after her overdose, she entered an inpatient drug-treatment program. Upon her release from that facility, she was told that she should remain in an active-treatment program. However, Lori testified that she did not begin an active-treatment program in 2003, nor is she currently involved in any treatment.[2] She stated that she was cured of her drug problem in 2005 and did not have time to attend AA meetings.
¶ 29. Dr. Galloway testified that Lori’s testimony that she was cured of her addiction and that she did not attend any type of support group meetings gave her a greater propensity to fall back into her *1255 addiction. He further stated that although his recommendation was for Lori to attend a support group, she had refused to do so.
¶ 30. Second, there was sufficient testimony in addition to Dr. Galloway’s testimony for the chancellor to find Jenny’s deep-seated antipathy toward Lori. Rebecca testified that, during the six months following Lori’s last visitation with Jenny, Jenny would pack her things and wait for Lori to pick her up for the weekend; however, Lori never came to get Jenny. Jenny became very hurt and angry because she thought she had done something wrong to make Lori stop seeing her. Also, Jenny received a birthday card from Lori on April 1, 2008. The card, which was admitted into evidence, was ripped apart by Jenny. Jenny also wrote: “I hate my mother [Lori]” across the front of the card.
¶ 31. Jenny’s uncle testified that Jenny appeared angry at her mother. He stated that Jenny would shake like a leaf on a tree if Lori’s name was mentioned. A close friend of George’s testified that she was outside on the carport of Jenny’s house and told Jenny that her mama was home. Although the friend was referring to Rebecca, Jenny’s stepmother, Jenny thought she was referring to Lori. Jenny immediately ran inside the house screaming and crying that she was not going with her. However, Jenny began to calm down when she realized it was actually Rebecca who was home and not Lori.
¶ 32. We find substantial evidence in the record to support the chancellor’s finding that George proved, by clear and convincing evidence, the ground of deep-seated antipathy under section 93-15-103.(3)(f) for termination of Lori’s parental rights. Accordingly, this issue has no merit.

2. Whether George interfered with Lori’s visitation rights with Jenny.

¶ 33. Lori further argues that her parental rights should not have been terminated because her visitation rights were frustrated by George. In support of her contention, Lori sites this Court’s ruling in A.C.W., 957 So.2d at 1045-46 (¶ 16), which states that:
There is also support for the chancellor’s decision not to terminate parental rights when there is interference with the relationship. It was in error for a chancellor to terminate parental rights of a mother who tried to keep a relationship with her children and there was third[-]party interference with her relationship with the children. De La Oliva v. Lowndes County Dep’t of Pub. Welfare, 423 So.2d 1328, 1331-32 (Miss.1982). Similarly, it was not error for a chancellor to refuse to terminate the parental rights of the father when the mother was part of the reason for the erosion of the relationship. In re M.L.W., 755 So.2d 558, 563 (¶ 22) (Miss.Ct.App.2000).
¶ 34. Lori states that George refused to allow her visitation with Jenny. However, there is minimal evidence, if any at all, to show that George actively interfered with Lori’s visitation rights. Lori’s final official visitation with Jenny was in March 2004. Rebecca told Lori that Jenny had plans with her friends on Lori’s next visitation weekend. Lori became upset and asked Rebecca why she dared to make plans for Jenny during Lori’s visitation. However, Lori made no attempt to pick Jenny up for the weekend or make other arrangements for visitation. Rebecca testified that neither she nor George had done anything to block Lori’s visitation since that time.
¶ 35. Lori testified that George threatened to call the authorities if Lori stepped on his property. However, her testimony is inconsistent with other evidence in the case. Rebecca testified that, during the next six months, Jenny would pack her *1256 things and wait for Lori to pick her up; however, Lori never came to get her. Further, Lori did not attempt to call Jenny to exercise her phone visitation. Lori testified that she failed to send Jenny birthday presents or attend her school functions.
¶ 36. In A.C.W., the chancellor made a specific finding that the mother actively frustrated the attempts of the father to exercise his visitation rights. Id. at 1046 (¶ 20). This Court held that:
We cannot say that the judge was in error in refusing to find an erosion of the relationship in this case. The witnesses seemed to indicate that there was not much of a relationship between [the father] and his daughter, and the chancellor found that this was partly because of the difficulties presented by [the mother] and her parents. Accordingly, he stated that he would not find an erosion of the relationship when the party seeking termination was partly to blame for the lack of a relationship.
Id. at (¶21). Here, there was no such finding made by the chancellor. The chancellor’s termination of Lori’s parental rights was based on the chancellor’s finding of deep-seated antipathy and anger by Jenny toward Lori. Any finding by the chancellor of the erosion of Lori and Jenny’s relationship was based on Lori’s actions, not George’s. We find this case is distinguishable from A.C.W. As such, this issue has no merit.

3. Whether it is in Jenny’s best interest that Lori’s parental rights be terminated.

¶ 37. Finally, Lori claims that the chancellor improperly found that it was in Jenny’s best interest that Lori’s parental rights be terminated. Specifically, she cites to the current stability in her life— her job, her visitation with her son, her custody of her other daughter, and her drug-free lifestyle — as proof that it is in Jenny’s best interest to have a relationship with her.
¶ 38. Once a statutory ground for termination has been satisfied, the chancellor must determine whether the termination of parental rights in the best interest of the child. M.H., 17 So.3d at 617 (¶ 21). Here, the chancellor found that it was in Jenny’s best interest to maintain her living environment with her current family — father, stepmother, and stepbrothers. Under our extremely deferential standard of review, we find substantial evidence to support the chancellor’s finding.
¶ 39. The guardian ad litem found that it was in Jenny’s best interest to terminate Lori’s parental rights because of Jenny’s deep-seated antipathy toward Lori and because of Lori’s continued illnesses, including her addiction and depression. He testified that Lori had been given many chances to improve her relationship with Jenny. At many times throughout the custody proceedings, Lori ehose not to exercise her visitation rights. Lori has continued to stay in contact with Drew, a fellow drug user, because he is the father of her youngest child. Lori testified that she is cured of her drug addiction; however, Dr. Galloway testified that one cannot be cured of a drug addiction and must continue to seek support after recovery. Lori has refused to attend any support group meetings recommended by both her inpatient drug-treatment program and Dr. Galloway.
¶ 40. As discussed above, there was substantial evidence of Jenny’s anger toward Lori after Lori ended her visitation with Jenny. Dr. Galloway testified that the only way to reintroduce Lori into Jenny’s life without adversely affecting Jenny would be through the use of therapy *1257 and/or support groups. The chancellor’s finding that Jenny would be best served by remaining in her stable home environment without reintroducing Lori into her life is supported by the evidence in this case. This is especially true due to Lori’s refusal throughout these proceedings to seek continued treatment for her drug addiction. Accordingly, we find no error, and this issue is without merit.
¶ 41. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, ISHEE, ROBERTS AND MAXWELL, JJ. CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. KING, C.J., CONCURS IN RESULT ONLY. CARLTON, J., NOT PARTICIPATING.

. Fictitious names have been used for the parties in this case to protect the identity of the minor child.

. Lori is being treated for depression, but not for her drug addiction.