ISHEE, J„
for the Court:
¶ 1. Approximately one year after the adoption of a minor child, Z.F.,[1] by N.F., the child’s former parents, C.K. and K.K., moved to set aside the adoption and/or terminate N.F.’s parental rights and appoint themselves as guardians for Z.F. Thereafter, N.F. filed a motion to dismiss. The Hinds County Chancery Court granted a full investigation into the child’s well-being and subsequently granted N.F.’s motion to dismiss. C.K. and K.K. then filed a motion to reconsider and again sought termination of N.F.’s parental rights. The chancery court denied the motion; C.K. and K.K. now appeal. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. In April 2001, C.K. and K.K. adopted Z.F. from Kazakhstan when the child was approximately fourteen months old. After returning with the child to *872 their home state of California, C.K. and K.K. assert that Z.F. began exhibiting signs of severe behavioral problems and was abusive toward them and their other three children. Thereafter, Z.F. was evaluated by several medical providers who speculated that Z.F. had conditions including Attention Deficit Hyperactivity Disorder, Reactive Attachment Disorder, Oppositional Defiance Disorder, Post-Traumatic Stress Disorder, Autism, Obsessive Compulsive Disorder, Adjustment Disorder with Depressed Mood by History, and As-perger Syndrome.
¶3. C.K. and K.K. eventually determined that they could no longer care for Z.F. Accordingly, they placed the child in foster care; he lived in several different homes over a period of several years. Meanwhile, C.K. and K.K. placed a notice on the Internet seeking to find Z.F. a new adoptive home.
¶ 4. In early 2007, a Florida resident, T.S., responded to the Internet post and expressed her willingness to care for Z.F. C.K. and K.K. executed a power of attorney in favor of T.S. and sent Z.F. to live with T.S. However, three months later, T.S. informed C.K. and K.K. that she could no longer keep Z.F. and requested that they take the child back to California. C.K. and K.K. informed T.S. that Z.F. was no longer welcome in their home and that T.S. needed to locate a new family for the child.
¶ 5. Thereafter, T.S. enlisted the help of an adoption agency in Ohio, which, in turn, contacted N.F. N.F. agreed to adopt Z.F. in June 2007; C.K. and K.K. executed a special power of attorney for child care in favor of N.F. Z.F. subsequently moved to Jackson, Mississippi, to live with N.F. and her other adopted children. Following Z.F.’s move to Mississippi, C.K. and K.K. voluntarily consented to the adoption of Z.F. by N.F. and joined in N.F.’s petition for adoption, which was filed in the Hinds County Chancery Court.
¶ 6. The chancery court ordered an investigation by a guardian ad litem regarding N.F.’s ability to care for Z.F. After reviewing the guardian ad litem’s investigatory report, the chancery court approved the adoption and waived the usual six-month waiting pei'iod in order to provide “finality and stability for the child.” The judgment of adoption was entered on September 25, 2007.
¶ 7. Ten months later, after K.K. visited Z.F. in Jackson, C.K. and K.K. filed a petition to unseal Z.F.’s adoption record. The chancery court agreed to an in-camera review, but the court found no problems with the adoption. On' September 23, 2008, almost a full year after the entry of the judgment of adoption, C.K. and K.K. sought to set aside the adoption, terminate N.F.’s parental rights, appoint themselves guardians of Z.F., and, alternatively, have a guardian ad litem provided for the child. N.F. promptly filed a motion to dismiss the case on the grounds that C.K. and K.K. were estopped from contesting the adoption because they voluntarily consented to the adoption and failed to bring the action within six months of the entry of judgment of adoption. C.K. and K.K. then requested discovery from N.F. N.F. filed for a protective order requesting relief from answering the voluminous discovery as she claimed it was a “fishing expedition,” among other things. Thereafter, C.K. and K.K. filed a motion to compel discovery; N.F. argued that this motion was C.K. and K.K.’s attempt at a “fishing expedition.” C.K. also requested a hearing on the discovery matters.
¶ 8. The chancery court declined to hold a hearing on the discovery matters and granted N.F.’s motion for a protective order. Although investigations at the request of former parents are not required *873 when the former parents have surrendered a child for adoption, the chancery court, in an abundance of caution, appointed a guardian ad litem and ordered another full investigation into Z.F.’s well-being and into N.F.’s care of Z.F. The chancery court then granted a hearing on N.F.’s motion to dismiss. After carefully considering all of the parties’ submissions, the guardian ad litem’s investigatory report, and testimony from the guardian ad litem, the chancery court was “more satisfied than even before that the adoption at issue should not be set aside.” C.K. and K.K.’s motions to set aside the adoption, terminate N.F.’s parental rights, and/or appoint themselves as guardians were dismissed with prejudice.
¶ 9. Thereafter, C.K. and K.K. filed a motion to reconsider and again requested that N.F.’s parental rights be terminated. The chancery court denied the motion. Aggrieved, C.K. and K.K. appeal and assert that: (1) the chancery court abused its discretion by dismissing their case;, (2) the chancery court abused its discretion by granting N.F.’s request for a protective order from responding to C.K. and KK.’s discovery requests and by declining to hold a hearing on the discovery matters; and (3) the chancery court abused its discretion by denying C.K. and K.K.’s motion to reconsider. Finding no error, we affirm.
DISCUSSION

I. Granting N.F.’s Motion to Dismiss

¶ 10. This Court utilizes “a de novo standard of review when considering whether a trial court erred when it granted a motion to dismiss.” Walton v. Walton, 44 So.3d 1035, 1038 (¶ 10) (Miss.Ct.App.2010) (citing Harris v. Miss. Valley State Univ., 873 So.2d 970, 988 (¶ 54) (Miss.2004)). Additionally, statutory authority and the Mississippi Supreme Court’s interpretation of the law provide a strict six-month statute of limitations for challenging adoption actions after the judgment of adoption has been entered. Miss.Code Ann. § 93-17-15 (Rev.2004); In re Adoption of J.E.B., 822 So.2d 949, 953 (¶ 15) (Miss.2002). Only upon a showing of jurisdictional defect can a petitioner obviate the six-month time bar and attempt to set aside an adoption. Matter of Adoption of R.M.P.C., 512 So.2d 702, 706 (Miss.1987). Furthermore, as a matter of public policy, “setting aside adoption decrees is disfavored even before six months has expired.” In re Adoption of J.E.B., 822 So.2d at 951 (¶ 6). As stated by the supreme court, “[t]he very nature of an adoption is to create a legally binding and unbreakable bond between the adoptive parents and the adopted child.” Id. at 953 (¶ 14).
¶ 11. Additionally, “[t]he reasons for which parental rights may be terminated are controlled by the Legislature. The courts have no right, authority or power to add to those reasons.” L.O. v. G.V., 37 So.3d 1248, 1251 (¶ 16) (Miss.Ct.App.2010) (quoting Gunter v. Gray, 876 So.2d 315, 319 (¶ 19) (Miss.2004)). In order to terminate parental rights, at least one of the following circumstances must be found:
(a) A parent has deserted without means of identification or abandoned a child ...; or (b) A parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; or (c) A parent has been responsible for a series of abusive incidents concerning one or more children; or (d) When the child has been in the care and custody of a licensed child caring agency or the Department of Human Services for at least one (1) year, that agency or department has made diligent efforts to develop and implement a plan for return of the child to *874 its parents, and ... [t]he parent has failed to exercise reasonable available visitation with the child; or ... [t]he parent, having agreed to a plan to effect placement of the child with the parent, fails to implement the plan so that the child caring agency is unable to return the child to said parent; or (e) The parent exhibits ongoing behavior which would make it impossible to return the child to the parent’s care and custody ...; or (f) When there is an extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which was caused at least in part by the parent’s serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment; or (g) When a parent has been convicted of ... rape of a child[,] ... sexual battery of a child[,] ... touching a child for lustful purposes!;,] ... exploitation of a child[,] ... felonious abuse or battery of a child[,] ... carnal knowledge of a step or adopted child or a child of a cohabitating partner[,] ... murder of another child of such parent, voluntary manslaughter of another child of such parent, aided or abetted, attempted, conspired or solicited to commit such murder or voluntary manslaughter, or a felony assault that results in the serious bodily injury to the surviving child or another child of such parent; or (h) The child has been adjudicated to have been abused or neglected and custody has been transferred from the child’s parent(s) for placement ... and a court of competent jurisdiction has determined that reunification shall not be in the child’s best interest.
Miss.Code Ann. § 93-15-103(3) (Rev.2004).
¶ 12. In this case, C.K. and K.K. did not contest the adoption of Z.F. until approximately one year after the final entry of adoption. Additionally, C.K. and K.K. cite Mississippi Code Annotated section 93-13-l,[2] alleging that N.F. is “unsuitable to discharge the duties of guardianship” and that it is within the court’s discretion to remove an unsuitable guardian at any time, regardless of the time bar. They also claim that they were not afforded the opportunity to address or argue their claims before their case was dismissed.
¶ 13. Nonetheless, even after looking at the facts in a light most favorable to C.K. and K.K., the filing of the case occurred well past the six-month statute of limitations. C.K. and K.K. fail to provide any substantive evidence of a jurisdictional defect that would negate the time bar. Additionally, even if we were to ignore the procedural bar on C.K. and K.K.’s claim, N.F. is now Z.F.’s parent, not simply his court-appointed guardian. C.K. and K.K. voluntarily surrendered the child to N.F. and joined in the petition for adoption. After the final entry of the adoption, N.F. became Z.F.’s parent with full parental rights regarding the child. Hence, N.F. is subject to the terms of Mississippi Code Annotated section 93-15-103(3) regarding termination of her parental rights.
¶ 14. Regardless of whether N.F. should have been analyzed under standards of a guardian, as encouraged by C.K. and K.K., or under standards of a parent, the chancery court went so far as to order a second investigation by a guard *875 ian ad litem into N.F.’s care of Z.F. after the adoption. Indeed, when asked what evidence C.K. and K.K. relied upon in determining that N.F. was an unfit parent, C.K. and K.K.’s counsel advised the court that their evidence was couched in the guardian ad litem’s findings. However, said findings were wholly in favor of N.F.
¶ 15. The guardian ad litem testified to the following: “I have seen absolutely nothing to indicate that [N.F.] is unfit or that [she] is not the proper adoptive parent for [Z.F.] [The child] seems to be thriving in [N.F.’s] care.... [N.F.] has been one of those saviors who comes in and does adopt children from disruptive homes.... I have not found anything that causes me concern about [Z.F.] in [N.F.’s] care.” After independently reviewing the record, and, specifically, the testimony and the report of the guardian ad litem, we are in agreement with the chancery court that no evidence exists which would support setting aside the adoption of Z.F. by N.F., terminating N.F.’s parental rights to the child, or appointing a guardian ad litem for the child. Accordingly, we find no error in the chancery court’s dismissal of C.K. and K.K.’s case. This issue lacks merit.
II. Granting N.F. ⅛ Motion for a Protective Order Against C.K. and K.K. ⅛ Discoverg Requests
¶ 16. The Mississippi Supreme Court has stated that: “discovery is left to the discretion of the trial court, and a ruling may only be reversed if there has been an abuse of discretion.” Cole ex rel. Cole v. Buckner, 819 So.2d 527, 529 (¶ 6) (Miss.2002). In this case, N.F. was granted a protective order against C.K. and K.K.’s discovery requests on the grounds that the requests were overly burdensome and a “fishing expedition.”
¶ 17. After granting N.F.’s request, the chancellor chose to order a full investigation into N.F.’s care of Z.F. and Z.F.’s well-being, and he also ordered a hearing on all substantive matters in the case. In doing so, the chancellor was able to garner all information necessary to make a ruling and was further able to question the investigator first-hand, thus making the discovery requests moot. Indeed, the chancery court stated the following with regard to the discovery requests:
Petitioners [C.K. and K.K.] incorrectly assert that their discovery requests propounded to Respondent [N.F.] are the only method to assure this Chancellor that all facts needed for the child’s best interests are brought to his attention. In truth, this Court has fully availed itself of all available sources of information to determine the best interest ] of the minor child.... After exercising all due diligence, [a Mississippi Department of Human Services] worker determined that there was no evidence to support any allegation of neglect or abuse. Likewise, this Court has reviewed the carefully considered report of the appointed Guardian Ad Litem in this matter. The GAL was privy to all parties, all documentation, and all known influences of the minor child.... From all accounts and evidence, this Court is convinced that the minor child is happy, healthy and well cared for by his adopted mother. Allowing Petitioners to continue with unnecessary discovery will accomplish no good purpose and will, in fact, continue to cause turmoil in the minor child’s life.
¶ 18. Accordingly, we find no abuse of discretion in the chancellor’s decision to grant N.F. protection from C.K. and K.K.’s discovery requests; therefore, this issue is without merit.

III. Denying C.K. and K.K.’s Motion to Reconsider

¶ 19. Motions to reconsider are reviewed under an abuse-of-discretion *876 standard. Knight v. State, 14 So.3d 76, 79 (¶ 5) (Miss.Ct.App.2009). In this case, the chancery court handed down a three-page order denying C.K. and K.K.’s motion to reconsider. In the order, the chancellor fully addressed all of C.K. and K.K.’s assertions and cited applicable law on the issues. In conclusion, the chancellor stated: “This Court is charged with determining the best interest[ ] of the minor child. Clearly, it is in the best interest of the child to cease these unnecessary litigation stresses and to allow the child to continue to flourish in his new home.”
¶ 20. We agree and find that the chancellor thoroughly considered C.K. and K.K.’s motion to reconsider and did not abuse his discretion in denying the motion. Accordingly, this issue is meritless.
¶ 21. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, CARLTON AND MAXWELL, JJ„ CONCUR. ROBERTS, J, CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. This Court declines to identify minors in adoption cases. In the interest of the child's privacy, the minor’s name, as well as the names of family members and other relevant parties, have been substituted with initials.

. Mississippi Code Annotated section 93-13-1 (Rev.2004) states in relevant part: "[I]f any father or mother be unsuitable to discharge the duties of guardianship, then the court, or chancellor in vacation, may appoint some suitable person, or having appointed the father or mother, may remove him or her if it appearfs] that such person is unsuitable, and appoint a suitable person."